Good morning. I apologize. I may have mispronounced your client's name. You got it right, Dr. Eche. He's here with us today. Okay, so Eche is correct? Correct. All right. Well, I made a good guess then. Thank you. Thank you, Your Honor. Michael Brodsky on behalf of Appellants Dr. Peter Eche and Mr. Peter Lowe. Your Honor, when we read Section 705C, which is at the heart of this case, side by side with the naturalization residence requirements, which are found at 8 U.S.C. 1427, it's hard to conclude that Section 705C does anything other than confer presence in the United States for the purpose of meeting the naturalization continuous residence requirement. So I'd like to take a look at those side by side. First, Section 1427, which is titled Residence, prescribes that requisite to naturalization, one must have five years of continuous residence and two and a half years of physical presence within the United States. Section 1427B, then, is titled Absences, and it provides that that continuous residence can be deemed, quote, abandoned because of absence from the United States. Well, I guess what, in your reading of 705C, this is where I'm finding the strain. If Congress says that something doesn't apply for A, meaning naturalization, but does apply to B, meaning abandonment, how can it apply to A? Isn't abandonment a very specific term of art in immigration law? And if Congress wanted the residence in the Marianas to count towards the requirements of naturalization, why not just say it or even say nothing at all? Hasn't Congress said just the opposite? So that's where I'm finding yours just doesn't line up perfectly. Thank you, Your Honor. So, first, there's nothing in Section 705C that says it does not apply to the naturalization requirement, nothing whatsoever that says that. Second, the- Wait just a minute. The clear language of it says it doesn't. It says about abandonment or loss of status it has nothing to do with anything else. No, Your Honor. That's not correct. Well, I read it. For the purpose only of determining whether an alien lawfully admitted for permanent residence has abandoned or lost such status, such alien's presence. And that's- It doesn't say anything about what you're suggesting. That such status refers to the continuous residence requisite to naturalization. That such status is not defined in the statute. The government argues that the word abandoned, as used there, refers to the abandonment doctrine. Right. To conjure that up, there's nothing in the statute that says that. Then the government refers to very distant case law to come up with that. I don't have to go to distant case law. I go right to the naturalization statute, which says, quote, during the period for which continuous residence is required for admission to citizenship, end quote, a prolonged absence, quote, shall break the continuity of such residence. But that has nothing to do with lawfully admitted for permanent residence. Well, if I can just continue the quote, Your Honor. Unless the applicant shall establish to the satisfaction of the Attorney General that he did not, in fact, quote, abandon his residence in the United States during such period. So the naturalization statute is talking about abandonment. It's talking about the abandonment of the status of continuous residence. And it's saying that residence, that continuous residence, will be deemed abandoned because of absence. Okay. Then Section 705C says that physical presence in the Commonwealth, after the statute goes into effect and retroactive, will be considered physical presence in the United States. So because you've got the physical presence in the United States, you're not absent, and you've cured the abandonment of continuous residence. That's the way I read it. And all I have to do is look at the text of 705C and look at the naturalization statute. I'm not understanding what you do with the clause in 705C that says that nothing shall be construed to make any residence or presence in the Commonwealth before, as I understand it, November 28, 2009, residence or presence in the United States. Right. Well, how do you do that? And then it says, except for the purpose only of determining. Yeah. So for the purpose only of determining is determining how residence and presence affects LPRs, lawful permanent residence. So what nothing counts as presence or residence is meant to exclude the temporary alien workers. Which were uppermost on Congress's mind. Let me change. And my colleague asked you a question about this, so I'll let you go on. But I'm kind of worried about why you've exhausted your administrative remedies. Good question. I mean, it seems to me that Lowe's friend sends a letter to the district director. The district director responds, tells the friend not to appeal. Ash contacts the ombudsman who tells him to contact the USCIS directly. So I guess I'm trying to say, why is this enough? Good question, Your Honor. So the exhaustion requirement is prescribed in the ‑‑ I mean, what it really says to me is that we can have a written decision, because I think we'd have to have one here, saying that if you know somebody or you have some well-placed e-mails, that's enough to exhaust. You don't have to do anything else. No, Your Honor. So the exhaustion ‑‑ that's a good question. The exhaustion requirement is contained in Section 1421C, which then refers to having a hearing, an appeal hearing, pursuant to Section 1447A. Correct. So it's 1447A. Did we do the 1447A hearing or not? That's the question. Okay. Are you saying you did it? Yes, Your Honor. Because you contacted a friend and the ombudsman? No question we did, because here's why. The agency promulgated a regulation at HCFR 316.5, which specifically prescribes what you have to do to comply with 1447A. And it includes something being filed as an appeal, being treated as a motion for reconsideration. So the letter to the district director, not even by Loeb, but by his friend, is that? Yes, it is, Your Honor. And also, in terms of far as exhaustion, only one of the appellants would need to have had to exhaust it as remedies, and Etchings was direct. Etchings contacts the ombudsman, and he directs them to contact the USCIS directly, and they contact a field director, and that's enough? Yes, Your Honor, because he gave a written correspondence to that field director that's as complete and as exhaustive as a legal brief. The field director said, I will consider your case. He treated it as a motion to reconsider. He granted partial relief. So we're going to say in a written decision, because I don't find anything in the statute which would allow this, that if somebody knows somebody and sends them a letter, or if somebody sends an e-mail to the right guy, that that's enough to exhaust under the statute? No, not by itself, but the agency is the one that promulgated HCFR 316.5. So when the agency says, look, if you want to comply with the exhaustion requirement, here's what you do, and they say, if you file correspondence, it can be treated as a motion for reconsideration. That will satisfy exhaustion. And then they do it. The agency can't come back and say, no, just kidding. You really have to go by the letter of the statute. Our regulation doesn't mean anything. It's 316.5 that allows that correspondence. He should have. I mean, a month went by. They went back and forth. He asked for more. Why didn't they file something? Why didn't they do something according to the statute, administratively, rather than this off-the-course method in order to try to get here? Because the director said, I'll consider your case when he got the letter. If the director would have said, this is improper, you need to do this, he would have gone and done it. The agency can hardly – I mean, under any other principle there, at a minimum, the agency is stopped from asserting this. When he receives it, he treats it as a motion for reconsideration. We don't even know that it's the director. We know that Haith is a field director. We don't even know what that is. Well, he represented himself to have the authority to consider it. He said, I'll consider it. Well, I don't know that he did. All he said was, appeal. No, he didn't say appeal until after a month, until after he considered the case. He said, I will consider your case. That's what he said. Well, it seemed to me like in both instances it was friends or somebody trying to help him who didn't have any necessarily – I got no record they even had any authority. And they are saying, well, we'll look at it, see how good your case is. And then they send back and say, it's no good. Well, Ece corresponded directly with the field director. So there was no friend in between. Ece and the field director – With the ombudsman. Right. And then he goes to the field director. So the merit of his claims was directly with the field director. Well, what it looks like, I mean, strategically, maybe that was a good move had it worked out. But then the question is, I mean, do we really want to say that that's exhaustion?  Does the government argue that there was not exhaustion? The government does argue that, I think, half-heartedly. Because the other thing about the exhaustion, Your Honor, this is not a – Well, it is half-hearted. I just am not sure quite whether it's before us or not. First of all, it's not – the district court considered this and ruled that they did exhaust their administrative remedies. Second, this is not a jurisdictional statute. And the government has not raised this issue on cross-appeal. So the government's waived it anyway. So we shouldn't even be here. I was wondering if you were ever going to get to that. Because I didn't see that argued before this. I argued that in my brief, Your Honor. The government waived it. But this was a published opinion, right? Beg your pardon? This was a published opinion by the district court? Yes, it was. So right now, I mean, we almost have to do something, either agree, disagree, or – I mean, otherwise it's a published opinion, right? It's not presidential. Well, no, it's a fact-dependent opinion. I don't think you have to publish in this case unless you reach the constitutional issue. Your Honor, I would, unless there's pressing questions from the Court, I'd like to reserve the balance of my time if I may.  Okay. Thank you, Your Honor. Good morning. Good morning, Your Honor. May it please the Court, my name is Samuel Goh and I represent the government defendants in this matter. The question for this case, the question for the Court in this case, is whether Congress intended Section 705C to be a shield to protect the status of LPRs in the Commonwealth of the Northern Marianas Islands, also known as the CNMI, or as a sword to entitle a whole new class of persons to receive an extra benefit of becoming instantly eligible for naturalization. Now, a plain reading of Section 705C clearly and unambiguously shows that Congress intended 705C to be a shield. There's no mention of naturalization in the statute, and there's no indication whatsoever that Congress intended this section to apply to the residence and presence requirements of 8 U.S.C. 1427, the naturalization statute. As the Court accurately points out, the first part of 705C is, clearly and ambiguously states that nothing in this subtitle or amendments made by this subtitle shall be construed to make residence or presence in the Commonwealth before November 28, 2009, which was a transition date for the CNRA, residence or presence in the United States. And that is the rule that the CRNA establishes regarding residence or presence in the CNMI prior to the CNRA's effective date. And prior to the CNRA, the United States immigration and naturalization laws did not apply to the CNMI. Is the date so the structure of this is because there's so much history here that it's I think we really ought to understand it. The date that's referred to that this becomes effective or that the critical date is the same date as the date that CNMI lost the authority to control its own immigration? Does that make any sense at all? No, it does make sense, Your Honor. The CNRI was passed in 2008. The Congress made sure that there would be a time to transition because there was several new rules in effect to November 28, 2009. So the CNMI government and the United States government can make the appropriate arrangements to adjust for the CNRA. So in answer to your question, yes, that transition effective date was when U.S. immigration law applied to the CNMI. And prior to that immigration, the INA did not apply to the CNMI. So that those persons who were LPRs or in the CNMI lawfully prior to, what is it, November 28, 2009, which is the effective date, those had all been admitted pursuant to CNMI's enforcement of immigration authority? Your Honor, this just pertains to those who were admitted as LPRs under the United States statute. Under the United States? Yes. Okay. Maybe you want to respond to counsel's argument, taking those two statutes, comparing them section by section. It seems to me it makes a great argument that this does not apply only to what you're suggesting at all. Well, Your Honor, with regards to the exception, which is what they contend applies and makes residency in the CNMI residency in the United States prior to 2009. Right. The second part of that says, except for the purpose of only determining whether an alien lawfully admitted for permanent residence has a banned law status by such reason of absence of the United States, such aliens' presence in the Commonwealth before, on, or after the date of enactment shall be considered present in the United States. I guess the first thing I'd like to point out is that it only talks to the- I mean, I read that language directly to him, and he responded with the statute that he had in the naturalization statute. Yes. But with regards to the exception, it only talks about presence, and there is a difference between residence and presence. One can be, for example, a resident of San Francisco, you know, has a house there, but isn't present there. He, you know, perhaps traveled to New York, therefore he's physically present in New York and, you know, has his residence in San Francisco. So it clearly shows from here that the intent of that was not to make the residence and presence in the naturalization provision that this exception would apply to that. It clearly shows that it was just pertaining to the abandonment doctrine. And it also just makes sense because in terms of, you know, losing such status, I know that he actually referred to Gooch, and the only way- What are you going to do with Gooch? Your Honor, Gooch actually supports our case because in Gooch they actually talk about the definition of an LPR and says the phrase such status talks about we agree with the government that the definition refers not to the actuality of one's residence but to one's status under immigration laws. And so both the plain reading of the statute and Gooch support the reading that the alien- such status refers to the LPR status of that alien. Your Honor, with that, it also makes sense because the abandonment doctrine does talk about the lapsing of LPR status if you've abandoned your LPR status. And so this specifically addresses that. As you've previously indicated, abandonment is a well-known term. The Ninth Circuit has, as we cite in our brief, several cases that talk about the abandonment of LPR status. And that refers-and therefore that refers- the loss of such status refers to the status of being an LPR. What about the exhaustion? Obviously the district court said that they had exhausted based on what they did. You didn't appeal that. What's your position on that? Your Honor, we believe that the court has the right to determine for themselves whether subject matter jurisdiction is appropriate here, whether the court has that. Is this a jurisdictional statute? Your Honor, the failure to exhaust administrative remedies would be something where the court would see whether it's properly before the court, whether it should be within the administrative proceedings or whether it should be properly for judicial review. Do you have a case that suggests this is a jurisdictional issue? I do not presently, Your Honor, but I'd be happy to brief that if that would be something that the court would look at. Well, I found it a little odd that it wasn't appealed. And therefore, I'm left with trying to determine whether it's really that important. Unless it becomes jurisdictional in nature, I don't know whether it is. Your Honor, it is important because those statutes were specific there and it returns to the actual circumstances once Dr. Esch and Mr. Lowe receive their decisions. Below their decisions, it clearly states that you have the right to appeal to a hearing officer under ACFR, I believe it was, or to file an N-336. Well, frankly, they didn't tell them to appeal. They told them to wait their time and file again. Well, Your Honor, it's clearly written on the bottom of the decision on what is a proper way to appeal it. So therefore, when they receive the decision, they receive accurate information as to how to appeal to file a proper form N-336 with the hearing officer. And that would be the proper way under ACFR 336.2. I have a question. Are there a lot of people that, if we published on this, that would be affected by this? Or are there just so few people who might be affected by 705C that it just doesn't really matter? Your Honor, there would be... I mean, how many people are there that would fit into this group? Thousands of people. So there are a lot of people. Yes, there are a lot of people. And suffice to say... Are there other cases that are pending raising this same issue? Your Honor, I am not aware of those cases, if there are any. But that might just be because those cases have not been communicated to me. But going back to the plain reading of the statute, if Congress had intended for all these LPRs to become... for their residency in the CMI to be considered residency in the United States, they would have said so. They would have said that this does pertain to naturalization. They would have included residents as part of this exception, but they do not. They include residents specifically as part of the rule to say that nothing in this section can be construed to make residents or presence in the Commonwealth residents or presence in the United States. So I think a plain reading of the statute shows that it clearly and unambiguously refers... and making sure that they have not been considered to have abandoned status by living in the CMI. Your Honor, I just... I also did want to state that the CNRA limited the before, on, or after language to this purpose only. And so the words, this purpose only, should also be considered to be construed narrowly. Plaintiffs also state this in their reply brief. And so, except for this narrow, clearly specified exception, that should be construed narrowly. The way that plaintiffs read that statute in order to make it say that, oh, this pertains to fulfilling the five-year continuous residence requirements, is taking that and just broadening the whole statute outside of what's actually in the plain language of the statute. So, Your Honor, we would also submit that that's further evidence that this was just limited to the LPR status and the abandonment doctrine pertained to LPR status. And, Your Honor... Your Honor, if there's no more questions... There don't appear to be additional questions. Okay. Thank you very much. Thank you. I'd like to pick up on how the statute should be construed. In other words, there's been an argument that it should be construed narrowly against us. And I think exactly the opposite is the case. So, when we're going about construing a statute, the first task should be to ask, what is the nature of the statute we're construing in order to find the rules of construction? Here, what we're dealing with is a retrospective remedial statute. The Supreme Court has described that kind of statute as follows. Quote, a state may pass retrospective laws that remove an impediment in the way of legal proceedings. Such acts are of a remedial character. End quote. That's in McFadden v. Evans, which is cited in my brief. Sutherland further defines a remedial statute as follows. To, quote, include statutes intended to correct defects, mistakes, and omissions in the civil institutions and the administration of the state and methods for, quote, determining rights, liabilities, or status. That sure sounds like Section 705C to me. And if a statute is remedial, quote, it should be given a liberal interpretation and should be construed to give the terms used the most extensive meaning to which they are reasonably susceptible. End quote. All reasonable doubts should be construed in favor of the applicability of the statute to the case. End quote. The government argues that because the statute is retroactive, it should be construed narrowly. But that's not the way the retroactive canons work. The retroactive canons state only that a statute is construed presumption against retroactivity if it's retroactive in the, quote, disfavored sense. And that disfavored sense is defined as, quote, taking away or impairing vested rights acquired under existing laws or creating a new obligation, imposing a new duty, or attaching a new disability in respect to transactions or considerations already passed. And that's the Fernandez case cited by the government, which quotes just a story in Society for Propagation of the Gospel. Section 705C doesn't take away or impair a disability. It confers a benefit under any reading, under the government's reading or under our reading. So to the extent the word residence creates an ambiguity in that residence could refer to continuous residence required for naturalization or it could refer to the status of an LPR, quote, an alien admitted for lawful permanent residence, that ambiguity in residence has to be conferred in favor of Dr. Etche, not against him. So does your argument turn on whether this clause is ambiguous? No, it doesn't, Your Honor. But if you find it ambiguous, then the rule of construction would favor us. I feel you can read – if you take, when you go back to your chambers, 705C and read it next to 1447, spend five minutes on that, you're going to be hard-pressed to come up with any other conclusion. If you still feel it's ambiguous, then the ambiguities are construed in our favor. Well, if we didn't feel it was ambiguous in the first place and we compare and we come differently than what you've suggested, then we rule for the government, is that it? I don't think this statute is read that way. Well, I understand your argument.  It just seems to me that your argument either turns on because it's ambiguous, I have to look at something, or it turns on whether it's clear and unambiguous in my interpretation of the statute as it is. Okay, well, the dictionary defines an ambiguous word or phrase as one that's capable of more than one grammatically correct meaning. So in that sense, the word residence is capable of more than one grammatically correct meaning. It can refer to either one of those two things. So if you can't come to a conclusion immediately and there's any doubt, in other words, what the canons of construction say is in a retrospective remedial statute, if there's any reasonable doubt, in other words, the government has to prove beyond a reasonable doubt that its reading is correct, if there's any reasonable doubt created by the two possible meanings of residence. I think reasonable doubt is that word. It can't be. Can I just ask one question? Yes, Your Honor. This statute that is the same statute, is it not, or am I simply wrong on this, that transferred the operation of the immigration system to the United States from CNMI? It's the same statute in a different section. So that these people were, although it was the United States law that was being applied, it was the local authorities who were administering the law prior to this time. Prior to. And so there was a transit. Because the U.S. was going to take over border control, there was a transition period to allow them to get their metal detectors in. There was a physical activity they had to take over. But as far as allowing LPRs to count their time toward the continuous residence front, there's no physical thing that had to be in place. There's no reason. Your time has expired. Thank you, Your Honor. Thank you. This matter will stand submitted. The last matter on calendar is the United States of America v. James Santos, Joaquina Santos, Timothy Villagomez. Cases 09-10332, 09-10334,
judges: Schroeder, Callahan, Smith